UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE LUXURY JET SKI RENTALS LLC | Case No.:  22cv2009-LL-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART LUXURY JET SKI RENTALS, LLC'S AND TYLER PETERS' MOTION FOR SUMMARY JUDGMENT** [ECF No. 79]**;**<br><br>**(2) GRANTING IN PART AND DENYING IN PART CLAIMANTS' MOTION FOR SUMMARY JUDGMENT** [ECF No. 78]**;**<br><br>**(3) DENYING LUXURY JET SKI RENTALS, LLC'S CROSS-MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND** [ECF No. 85]**;**<br><br>**(4) EXONERATING LUXURY JET SKI RENTALS, LLC FROM ALL LIABILITY** [ECF No. 1]**;** |

1

**(5) DISMISSING WITH PREJUDICE CLAIMANTS' THIRD-PARTY COMPLAINT AGAINST TYLER PETERS** [ECF No. 35]

Before the Court are (1) Luxury Jet Ski Rentals, LLC's and Tyler Peters' Motion for Judgment on the Pleadings, or Alternatively, Summary Judgment and Rule F(8) [ECF No. 79]; (2) a Motion for Summary Judgment filed by Farhan Hammad, Kardinia Almosawi, Ayman Mahmmad, Maytham Farouq, and Noor Tashtosh [ECF No. 78]; and (3) a Motion for Judgment on the Pleadings by Counterclaimant Luxury Jet Ski Rentals, LLC, or Alternatively Cross-Motion for Summary Judgment With Respect to Duty to Defend [ECF No. 85].[1] The three Motions have been fully briefed, and the Court deems them suitable for submission without oral argument. S.D. Cal CivLR 7.1(d). For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** Luxury Jet Ski Rentals, LLC's and Tyler Peters' Motion for Summary Judgment on superseding cause, negligent entrustment, and enforcement of liability waivers [ECF No. 79]; **GRANTS IN PART and DENIES IN PART** the Motion for Summary Judgment on Luxury Jet Ski Rentals' affirmative defenses and contractual counterclaims [ECF No. 78]; and **DENIES** Luxury Jet Ski Rentals, LLC's Motion for Summary Judgment on the duty to defend [ECF No. 85]. The Court also **EXONERATES** Luxury Jet Ski Rentals, LLC from all

---

[1] Luxury Jet Ski Rentals, LLC and Tyler Peters requested judicial notice as to ownership of an email used by decedent to book the reservation. ECF No. 99. The Court denies the request for the purposes of this Order because it was unnecessary for the Court's analysis.

2

liability [ECF No. 1] and **DISMISSES with prejudice** Claimants' Third-Party Complaint against Tyler Peters [ECF No. 35].

## I.      BACKGROUND

Unless otherwise noted, the following facts are undisputed.

This wrongful death, survival, and personal injury action arises from the death of Mohammad Farhan Mohammad ("Mohammad"), who was killed after Adian H. Ali ("Ali") collided her rental jet ski into his stationary rental jet ski on November 19, 2021. ECF No. 104, LJS Rentals' Statement of Undisputed Material Facts (hereinafter "LJS UMF"), at 40–42, 44 (Nos. 9, 10, 12). Ali's negligent operation of her jet ski was the proximate cause for the collision.[2] LJS UMF Nos. 9, 13. Mohammad's passenger was Noor Tashtosh. LJS UMF No. 7; ECF No. 104, Claimants' Additional Statement of Undisputed Material Facts (hereinafter "Claimants UMF"), at 52 (No. 5). Ali's passenger was M.F. LJS UMF No. 7; Claimants UMF No. 4. Also in the group, Nariman Ali drove a third jet ski with passenger Kardinia Almosawi, and Ayman Mahmmad and Maytham Farouq operated a fourth jet ski. Claimants UMF Nos. 6, 7.

Prior to the collision, Ali operated her jet ski at excessive speeds and used it to spray and splash other jet skis around her, including Mohammad's. LJS UMF No. 7. After splashing the two other jet skis, Ali then turned around and moved towards Mohammad's jet ski, which was stopped at the time with neither Mohammad nor Noor Tashtosh looking toward Ali. LJS UMF No. 13; Claimants UMF No. 9. Ali's jet ski collided into Mohammad's, and all four riders fell in the water. Claimants UMF No. 10. M.F. saw Mohammad hit his head with the steering handle of Ali's jet ski as they were falling. Claimants UMF No. 11. Mohammad suffered fatal injuries and died after the collision. Claimants UMF No. 12.

/ / /

---

[2] A jet ski is also referred to as a "personal watercraft" or "PWC." LJS UMF No. 2.

Ali rented the four jet skis from Luxury Jet Ski Rentals, LLC ("LJS Rentals LLC") for use by herself and her friends and family. LJS UMF No. 2; ECF No. 79-3, Declaration of Tyler Peters ("Peters Decl."), ¶ 2. Tyler Peters ("Peters") is the owner and managing member of LJS Rentals LLC. Claimants UMF No. 107; Peters Decl. ¶ 1. The Watersport Rental Agreement contained a waiver-of-claims clause, an assumption-of-risks clause, an indemnification clause, a condition to not use the jet skis in a careless, reckless, or negligent manner, and a Jet Ski Safety Checklist, but the parties dispute whether Ali, Mohammad, or Claimants signed it or agreed to its terms and conditions. LJS UMF Nos. 3, 4, 5, 6; ECF Nos. 79-5, 79-6, 79-7, 79-8, 79-9. Ali attests that "[l]iability waivers were submitted to Luxury Jet Ski Rentals on behalf of myself and all others renting the jet skis with me." ECF No. 79-21, Declaration of Adian H. Ali ("Ali Decl."), ¶ 3.

Following Mohammad's death, on December 19, 2022, LJS Rentals LLC filed a complaint pursuant to the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.*, Rule 9(h) of the Federal Rules of Civil Procedure, and Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("LOLA Complaint") seeking exoneration from or limitation of liability as to the incident to $9,592.64, which is the value of the jet ski operated by Mohammad. ECF No. 1. On January 17, 2023, the Court issued an order requiring all claims arising from the incident to be filed in this matter. ECF No. 6. On June 27, 2023, Farhan Hammad (Mohammad's father), Ayman Mahmmad (Mohammad's brother), Noor Tashtosh (Mohammad's sister)—individually and as guardian ad litem of M.F., a minor and Mohammad's niece—, Kardinia Almosawi (Mohammad's sister), and Maytham Farouq (Mohammad's nephew) (collectively "Claimants") filed an answer to the LOLA Complaint, as well as an amended claim for compensatory damages in excess of the stipulated value of the jet ski ("Amended Claim") against LJS Rentals LLC. ECF Nos. 33, 34.

In the Amended Claim, Farhan Hammad ("Hammad") asserts a survival and wrongful death action as successor in interest under federal maritime law, and the

remaining Claimants seek individual damages for past and future physical and mental injuries as well as general and special damages.[3] ECF No. 34. The Amended Claim alleges negligence and gross negligence against LJS Rentals LLC by the following acts or omissions:

a. Failing to determine whether DECEDENT MOHAMMAD and Ms. Ali [] were competent and qualified to operate a high-power PWC;

b. Failing to provide DECEDENT MOHAMMAD and Ms. Ali adequate training and instruction;

c. Failing to properly equip the PWCs;

d. Entrusting high-powered racing PWCs to inexperienced operators;

e. Failing to verify by sight and testing customers were capable of operating high-power PWCs safely;

f. Failing to implement policies and procedures to verify by sight and testing that customers are capable of operating the high-power PWCs safely;

g. Entrusting a high-powered racing PWC to Adian H. Ali, an inexperienced operator;

h. Failing to verify by sight and testing Adian H. Ali was actually capable of the PWC rented to her;

i. Renting high-powered racing PWCs without properly functioning kill switch mechanism;

j. Failing to periodically test the subject PWCs kill switch mechanism;

k. Failing to maintain the subject PWCs kill switch mechanism;

l. Renting high-power racing PWCs without a properly functioning learning key to limit their rate of speed;

m. Failing to periodically test the PWC's learning key;

n. Failing to maintain the subject PWCs learning key mechanism;

o. Failing to ensure that its PWCs were fit for their intended purpose of recreating on a waterway;

p. Failing to ensure that its PWCs were equipped with all necessary equipment and that such equipment was in good operating order;

q. Failing to ensure that its customers and users were able to competently and safely operate the PWCs and any equipment provided with the PWCs;

r. Failing to provide adequate instructions and safety briefings to ensure Claimants would be prepared to safely operate high power racing PWCs;

---

[3] Mohammad's siblings Ayman Mahmmad, Noor Tashtosh, and Kardinia Almosawi also seek wrongful death damages. ECF No. 34 ¶ 32.

s. Failing to establish and institute adequate maintenance and repair procedures to ensure the PWCs and the PWCs equipment were in good operating condition;

t. Failing to use reasonable care to ensure the PWCs were properly maintained and in safe repair as of the date of the incident;

u. Failing to adequately describe the level of activity required in the operation of the PWCs so as to enable Claimants to evaluate the subject activities in light of their respective physical capabilities;

v. Failing to adequately describe the operation of the PWCs to the Claimants;

w. Failing to promulgate, enforce, and/or follow adequate policies and/or procedures for inspecting and/or monitoring and/or maintain the PWCs equipment;

x. Failure to properly and adequately inspect the PWCs prior to operation;

y. Failing to initiate safety policies and practices and/or execute and comply with existing rules, regulations, policies and practices regarding the inspection and/or monitoring and/or maintenance of equipment;

z. Failing to properly supervise and oversee the operation of the PWCs;

aa. Consenting to the operation of high-power PWCs by inexperienced operators;

bb. Failing to ensure that properly trained and supervised persons operated the subject PWCs;

cc. Failing to warn Claimants of the dangers with respect to going on the PWCs;

[dd.] Failing to provide a PWC with proper equipment and/or adequately maintained equipment.

ECF No. 34 ¶ 24. Claimants also filed a Third-Party Complaint for wrongful death and personal injury against Peters and Ali alleging negligence, gross negligence, negligence per se, wantonness, and recklessness.[4] ECF No. 35. On August 27, 2023, LJS Rentals LLC filed counterclaims against Claimants and crossclaims against Ali for breach of contract, express indemnity and defense, implied indemnity, contribution, and declaratory relief. ECF No. 46.

---

[4] The Third-Party Complaint was also filed against Michael Hall, an employee of LJS Rentals LLC who was later voluntarily dismissed from this matter on October 18, 2023. ECF Nos. 35, 63.

22cv2009-LL-JLB

On December 28, 2023, Claimants filed a Motion for Summary Judgment seeking to dismiss several of LJS Rentals LLC's affirmative defenses, as well as LJS Rentals LLC's counterclaim for contractual duties. ECF No. 78.

Also on December 28, 2023, LJS Rentals LLC and Peters filed a Motion for Judgment on the Pleadings, or Alternatively, Summary Judgment, seeking dismissal of all claims against them as a matter of law—and exoneration pursuant to the LOLA Complaint—because they argue Ali's intentional actions amount to a superseding cause and that Claimants have not supported each element of negligent entrustment. ECF No. 79-1 at 7, 12, 24.

On January 4, 2024, LJS Rentals LLC filed a Motion for Judgment on the Pleadings, or Alternatively, Cross-Motion for Summary Judgment with Respect to Duty to Defend. ECF No. 85.

On April 18, 2024, the Court issued an order granting Claimants' (also referred to as Third-Party Plaintiffs) motion for default judgment against Ali on the issue of liability, which was joined by LJS Rentals LLC, but denied without prejudice the requests for damages. ECF No. 107.

## II.     LEGAL STANDARD

### A.     Judgment on the Pleadings

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). However, if the court goes beyond the pleadings to resolve an issue, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d); *Hal Roach Studios, Inc.*, 896 F.2d at 1550.

### B.     Summary Judgment

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). "If the evidence [opposing summary judgment] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

The moving party bears the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. "In order to carry its burden of production, the moving party must produce either evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmovant to show "there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). The nonmovant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, [and] designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks and citation omitted). In carrying their burdens, the parties can either cite to evidence supporting their own position or show the other side's position is either unsupportable or devoid of any genuine dispute. Fed. R. Civ. P. 56(c)(1). In addition, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

When parties submit cross-motions for summary judgment, "each motion must be considered on its own merits," and "the court must review the evidence submitted in

support of each cross-motion." *Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citation omitted).

In this Order, where a motion was presented as either a motion for judgment on the pleadings, or alternatively, as a motion or cross-motion for summary judgment, the Court will analyze the motion as one for summary judgment.

### C.   Admiralty Jurisdiction

A collision between watercraft on navigable waters falls under admiralty jurisdiction. *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206 (1996). Federal maritime law—a type of common law—applies to admiralty claims and generally governs substantive liability standards.[5] *See id.*; *In re Complaint of Rockaway Jet Ski, LLC*, No. 14-CV-1979 (JMA), 2016 U.S. Dist. LEXIS 187673, at *7–8 (E.D.N.Y. Dec. 19, 2016); *see also Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 992 (2019). "The exercise of admiralty jurisdiction, however, does not result in automatic displacement of state law." *Yamaha Motor Corp. U.S.A.*, 516 U.S. at 206. (internal quotation marks and citation omitted). State law should not be applied in an admiralty case "when the state remedy works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994) (internal quotation marks and citation omitted). "Conversely, state law may be applied where no applicable admiralty rule exists, where local and state interests predominate and where the uniformity principle is not crucial." *In re Complaint of Rockaway Jet Ski, LLC*, 2016 U.S. Dist. LEXIS 187673, at *8 (internal quotation marks and citation omitted). State wrongful-death and survival statutes may be applied in cases arising out of accidents in territorial waters where there is no independent maritime remedy. *Id.* at 207, 215–16.

/ / /

---

[5]The terms "admiralty" and "maritime" are used interchangeably in this Order.

**III.   LJS RENTALS LLC'S AND TYLER PETERS' MOTION FOR SUMMARY JUDGMENT**

LJS Rentals LLC and Peters argue that the amended claim for compensatory damages against LJS Rentals LLC and the third-party complaint against Peters filed by Claimants should be dismissed as a matter of law—and they should be exonerated as to any liability—because (1) Claimants lack any probative evidence showing LJS Rentals LLC or Peters negligently entrusted the jet ski to Ali, and (2) Ali's intentional conduct is a superseding cause that bars liability against all others. ECF No. 79-1 at 7, 12, 14–22, 24.

**A.     Negligent Entrustment**

One who supplies a vessel to a person whom the supplier knows or should know would be likely to use the vessel in a manner "involving unreasonable risk of physical harm to himself and others" is subject to liability for the resulting physical harm pursuant to the doctrine of negligent entrustment. *See Churchill v. F/V Fjord*, 892 F.2d 763, 771 (9th Cir. 1988) (citing Restatement (Second) of Torts § 390).

Claimants acknowledge that they make two claims of negligent entrustment: "[e]ntrusting high-powered racing PWCs to inexperienced operators" and "[e]ntrusting a high-powered racing PWC to Adian H. Ali, an inexperienced operator." ECF No. 34 ¶¶ 9, 24; ECF No. 89 at 11, 13.

LJS Rentals LLC and Peters (hereinafter, collectively "LJS Rentals") argue that Claimants do not show that LJS Rentals knew or should have known at the time of rental that Ali "would violate her rental terms and the law in the manner she did so as to involve unreasonable risk to the other rider-renter claimants." ECF No. 79-1 at 18; ECF No. 91 at 5. They also provide Ali's declaration that she had rented and operated jet skis prior to November 19, 2021, and that she was able to drive the jet ski without any problems before the incident. Ali Decl. ¶¶ 4–5.

The Court finds Claimants have not provided evidence to support a claim of negligent entrustment because they do not offer evidence that LJS Rentals knew or should have known that Ali would be likely to use the jet ski in a dangerous manner. They instead

offer support for their claims of direct negligence, which the Court will address in a separate section. *See infra* Part III.B. Ali's operation of her jet ski was the proximate cause of the incident, so her actions are the focus of this analysis. Not only is there a lack of evidence from Claimants that LJS Rentals knew or should have known that Ali would operate the jet ski in a dangerous manner, but there is evidence that Ali had experience renting and operating jet skis, which does not support the claim that LJS Rentals entrusted the jet ski to an "inexperienced operator." *See Churchill*, 892 F.2d at 771 (finding a father had no reason to believe his son would operate a skiff in a harmful manner because he had not previously disobeyed his father on any serious manner and had previously operated a skiff competently); *In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d 993, 1001 (D. Ariz. 2006) (finding no negligent entrustment when there was no evidence that boat renters were inexperienced or that the boat owners knew or should have known that the boat renter was incompetent to operate the boat). Accordingly, the Court **GRANTS** summary judgment in favor of LJS Rentals on the claims of negligent entrustment.

### B.   Maritime Negligence

In a claim for maritime negligence, "a plaintiff must establish the following elements: (1) the defendant was under a duty to the plaintiff to use due care; (2) the defendant breached that duty; (3) the plaintiff suffered damages; and (4) the breach of the duty proximately caused the plaintiff's damages." *Moreno v. Ross Island Sand & Gravel Co.*, No. 2:13-cv-00691-KJM-KJN, 2015 U.S. Dist. LEXIS 127887, at *51 (E.D. Cal. Sep. 23, 2015) (quoting *Caputo v. Holland Am. Line, Inc.*, No. C09-1096-JCC, 2010 U.S. Dist. LEXIS 51389, at *4 (W.D. Wash. May 25, 2010)). The duty of care owed to a non-seaman is "the ordinary negligence duty of reasonable care under the circumstances." *Peters v. Titan Navigation Co.*, 857 F.2d 1342, 1344 (9th Cir. 1988) (citation omitted).

LJS Rentals argues the following: (1) express assumption of the risk is a complete bar to any negligence claim against them because a "rental company owes no legal duty to protect a participant-plaintiff from the particular risk of harm involved in the activity"

/ / /

[ECF No. 79-1 at 14–15] and (2) there is no general duty by a rental company to warn of the inherent risks of jet skiing, or to train renters like Ali [*Id.* at 16].

Claimants argue that (1) decedent and Claimants did not sign or consent to the rental agreement for the jet skis nor its waivers of liability [ECF No. 89 at 16–17], (2) the liability waivers in the rental agreement are prohibited by statute 46 U.S.C. § 30527 [*Id.* at 21–22], (3) LJS Rentals negligently provided Ali with an unseaworthy jet ski incapable of adequate steering due to deficient maintenance [*Id.* at 23–25], and (4) LJS Rentals negligently failed to provide adequate instruction and training to Ali and Claimants [*Id.* at 25–28].

## 1.    Evidentiary objections

"A district court's ruling on a motion for summary judgment may only be based on admissible evidence." *Dzung Chu v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)*, 627 F.3d 376, 385 (9th Cir. 2010) (citation omitted). In a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(3). The party seeking admission of evidence bears the burden of proof of admissibility. *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). When a party objects to the proposed evidence, the party seeking admission must "direct the district court's attention to authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible by the district court." *Dzung* Chu, 627 F.3d at 385-86.

Claimants object to LJS Rentals' statements that Ali, Mohammad, Ayman Mahmmad ("Mahmmad"), Noor Tashtosh ("Tashtosh"), and Kardinia Almosawi ("Almosawi") signed the Watersport Rental Agreement or agreed to its terms and conditions, claiming that none of the signatures have been authenticated, citing to *Orr v. Bank of Am.*, 285 F.3d 764 (9th Cir. 2002), that "unauthenticated documents cannot be considered in a motion for summary judgment." LJS UMF Nos. 3, 4, 5, 6; *Orr*, 285 F.3d at 773.

/ / /

The Court first notes that *Orr* has been superseded by statute, as pointed out by LJS Rentals. *Harlow v. Chaffey Cmty. Coll. Dist.*, No. 21-55349, 2022 U.S. App. LEXIS 25357, at *2–3 (9th Cir. Sep. 6, 2022) ("The district court's reliance on *Orr*'s interpretation of Rule 56 before the 2010 amendments was an error because the legal standard has since changed."). The court in *Harlow* stated that unauthenticated evidence must be considered at summary judgment if it can "be presented *in a form* that would be admissible" at trial. *Id.* at *3 (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)).

The Court overrules Claimants' objection as to Ali's signature. In a declaration signed under penalty of perjury, attesting to her personal knowledge and ability to testify if called to do so, Ali declares that "[l]iability waivers were submitted to Luxury Jet Ski Rentals on behalf of myself and all others renting the jet skis with me." Ali Decl. ¶ 3. Although Ali does not specifically refer to her signature on the Watersport Rental Agreement, she has adopted the signature as her own by acknowledging that she submitted a liability waiver on behalf of herself. *See NLRB v. Howell Chevrolet Co.*, 204 F.2d 79, 85–86 (9th Cir. 1953) (finding an employee who returned a card with his signature had "clearly adopted it as his own signature," and the absence of testimony that the employee had signed it did not rob it of its authenticity). Thus, Ali can testify that she signed the liability waiver.

The Court also overrules Claimants' authentication objection as to the signatures of Mohammad, Mahmmad, Tashtosh, and Almosawi on the Watersport Rental Agreement pursuant to Federal Rule of Evidence 901(b)(1), which permits authentication by testimony of a witness with knowledge that an item is what it claims to be. Ali attests in her declaration that "I personally saw each of the others electronically sign the liability waivers." Ali Decl. ¶ 3. Additionally, Ethan Jerome, an employee of LJS Rentals LLC, states in his deposition that "I was in the office at the time. I witnessed them – the entire party work with Ms. Giselle and Ms. Marlena to complete their paperwork in full before we took them down to the dock." ECF No. 79-15, Deposition of Ethan Jerome ("Jerome / / /

Depo. Excerpts"), at 8; ECF No. 89-17, Deposition of Ethan Jerome ("Jerome Depo."), at 16–17. Thus, two witnesses could testify to authenticate the signed agreements.

LJS Rentals objects to Claimants' evidence that Mohammad did not sign the Watersport Rental Agreement as calling for expert opinion to compare e-signatures, lack of foundation, and speculation. Claimants UMF No. 73. Claimants present a declaration from Farhan Hammad, Mohammad's father, attesting that the signature on the agreement is not Mohammad's signature because it does not match his "actual signature" as depicted in his Certificate of Naturalization. ECF No. 89-3, Declaration of Farhan Hammad ("Hammad Decl."), ¶¶ 13–16; Claimants UMF No. 73. The Court overrules LJS Rentals' objection pursuant to Federal Rule of Evidence 901(b)(2), which provides that a nonexpert may authenticate handwriting as long as the witness's familiarity with it "was not acquired for the current litigation." Fed. R. Evid. 901(b)(2); *Simmons First Nat'l Bank v. Lehman*, No. C-13-02876 DMR, 2015 U.S. Dist. LEXIS 18302, at *11–12 (N.D. Cal. Feb. 13, 2015).

## 2.    Liability waivers

The Watersport Rental Agreement provided by LJS Rentals for renting its jet skis states that the participant agrees, *inter alia*, (1) "TO WAIVE ALL CLAIMS that they have or may have against the Host arising out of the Participant's participation in the Activities or the use of any equipment provided by the Host ("Equipment"), including while receiving instruction and/or training"; (2) "TO ASSUME ALL RISKS of participating in the Activities and using the Equipment, even those caused by the negligent acts or conduct of the Host, its owners, affiliates, operators, employees, agents, officers" and the "Participant and his/her parent(s) or legal guardian(s) understand that there are inherent risks of participating in the Activities and using the Equipment, which may be both foreseen and unforeseen and may include serious physical injury and death"; (3) "TO RELEASE the Host, its owners, affiliates, operators, employees, agents, officers . . . from all liability for any loss, damage, injury, death, or expense that the Participant (or his/her next of kin) may suffer, arising out of his/her participation in the Activities and/or use of the Equipment, including while receiving instruction and/or training" and the "Participant and his/her

parent(s) or legal guardian(s) specifically understand that they are releasing any and all claims that arise or may arise from any negligent acts or conduct of the Host, its owners, affiliates, operators, employees, agents, officers," but "nothing in the Agreement shall be construed as a release for conduct that is found to constitute gross negligence or intentional conduct;" and (4) "TO INDEMNIFY the Host, its owners, affiliates, operators, employees, agents, officers, and/or any entity to which the Host owes a contractual obligation, from all liability for any loss, damage, injury, death, or expense that the Participant (or his/her next of kin) may suffer, arising out of participation in the Activities and/or use of the Equipment, including while receiving instruction and/or training." LJS Rentals UMF No. 3; ECF Nos. 79-5, 79-6, 79-7, 79-8, 79-9.

Federal maritime law indicates that liability waivers used in the context of recreational water activities to disclaim the operator's or owner's own negligence are enforceable. *Rodriguez v. Seabreeze Jetlev LLC*, No. 4:20-cv-07073-YGR, 2022 U.S. Dist. LEXIS 154478, at *14 (N.D. Cal. June 23, 2022); *Brozyna v. Niagara Gorge Jetboating, Ltd.*, No. 10-CV-602-JTC, 2011 U.S. Dist. LEXIS 111546, at *11 (W.D.N.Y. Sept. 28, 2011) (collecting cases). "From these cases emerges the discernible standard that a pre-accident waiver will absolve an owner or operator of liability for recreational accidents taking place on navigable waters where the exculpatory clause '(1) is clear and unambiguous; (2) is not inconsistent with public policy; and (3) is not an adhesion contract.'" *Brozyna*, 2011 U.S. Dist. LEXIS 111546, at *11–12 (quoting *Charnis v. Watersport Pro, Ltd. Liab. Co.*, No. 2:07-cv-00623-RLH-GWF, 2009 U.S. Dist. LEXIS 76022, at *13 (D. Nev. May 1, 2009)). However, a liability waiver may not be used to shield a party from gross negligence. *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016 (9th Cir. 1999).

LJS Rentals argues that Ali, Mohammad, Mahmmad, Tashtosh, and Almosawi signed the Watersport Rental Agreement, which bars all claims of negligence. ECF No. 79-1 at 11, 14–15. Claimants argue that the Watersport Rental Agreement is unenforceable as to Mohammad, Mahmmad, Tashtosh, and Almosawi because they did

not sign it and did not agree to its terms and condition. ECF No. 89 at 7, 17. Setting aside the issue of signatures, the parties do not dispute whether the exculpatory clauses are generally valid, except that Claimants argue that a liability waiver is voided as unlawful pursuant to 46 U.S.C. § 30527 (formerly 46 U.S.C. § 30509). *Id.* at 21–22.

### a.   46 U.S.C. § 30527

The Court finds § 30527 inapplicable in this case. Section 30527 prohibits certain liability waivers regarding "vessel[s] transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country." 46 U.S.C. § 30527(a). The Ninth Circuit has recently held that the statute applies to vessels "transporting passengers from one port to another port (Port A to Port B), not transporting passengers away from and back to a single port (Port A to Port A)." *Ehart v. Lahaina Divers, Inc.*, 92 F.4th 844, 851 (9th Cir. 2024). A port, the Ninth Circuit explained, is "a place where vessels may load or unload cargo or passengers from or onto *land*—not a mooring buoy where passengers can depart from the ship into *water*." *Id.* at 853 n.14 (emphasis in original). The parties agree that the group took the jet skis from a floating dock at Safe Harbor Marina, San Diego and came back to the same dock. Claimants UMF No. 18. Mohammad's jet ski was in the water but idling when Ali collided with him. Claimants UMF No. 9; LJS Rentals UMF 10. Claimants argue that the group's destination was the Coronado Bridge, where the collision occurred. Claimants UMF No. 18; ECF No. 89 at 21–22. The Court finds that there was no transporting of passengers between ports in the United States in this case where the group rode jet skis from a dock, collided at a point in the water where one of the jet skis was idling near the Coronado Bridge, and then returned to the same dock. *See Ehart*, 92 F.4th at 853 ("The vessel that departs from Port A and returns to Port A might involve the transportation between a port and *the water*, but it does not involve the transportation of passengers between ports (plural)." (emphasis in original)).

The Court also agrees with those courts that have found § 30527 inapplicable because there is no "transporting" of passengers in cases of recreational jet skiing with no

set destination. *Waggoner v. Nags Head Water Sports*, No. 97-1394, 1998 U.S. App. LEXIS 6792, at \*14 (4th Cir. Apr. 6, 1998) (finding the statute only applies to common carriers and does not include jet ski rides); *Seabreeze Jetlev LLC*, 2022 U.S. Dist. LEXIS 154478, at \*11 & n.3 (finding the statute inapplicable to passengers conveyed on a tube behind a jet ski with no intended destination); *Jerome v. Water Sports Adventure Rentals & Equip., Inc.*, Civil Action No. 2009-092, 2013 U.S. Dist. LEXIS 52968, at \*24 (D.V.I. Apr. 12, 2013) (finding the statute inapplicable to recreational jet ski and snorkeling tour). Section 30527 does not apply here and thus does not bar the liability waivers at issue. *See Ehart*, 92 F.4th at 853.

### b.    Ali

The Court finds the Watersport Rental Agreement and its liability waivers are enforceable as to Ali. LJS Rentals presents evidence that Ali signed the liability waivers. Ali Decl. ¶ 3. Claimants do not present any evidence to refute that, or to argue that they are otherwise unenforceable as to Ali. LJS Rentals UMF Nos. 3, 4, 5. Accordingly, the Court **GRANTS** summary judgment in LJS Rentals' favor that the liability waivers in the Watersport Rental Agreement are enforceable as to Ali, thus barring any claims of negligence from Ali.

### c.    Mohammad, Tashtosh, Mahmmad, and Almosawi

In light of the evidence presented by both sides regarding the Watersport Rental Agreement, the Court finds there is a triable issue of fact on the enforceability of the agreement and its liability waivers as to Mohammad, Tashtosh, Mahmmad, and Almosawi. Claimants present a declaration from Farhan Hammad, Mohammad's father, attesting that the signature on the agreement is not Mohammad's signature because it does not match his "actual signature" as depicted in his Certificate of Naturalization. ECF No. 89-3, Declaration of Farhan Hammad ("Hammad Decl."), ¶¶ 13–16; Claimants UMF No. 73. They also produced deposition testimony from Tashtosh, Mahmmad, and Almosawi that they did not sign the Watersport Rental Agreement, agree to its terms and conditions, and did not book the jet skis. LJS UMF No. 6; Claimants UMF Nos. 79–82, 89–91, 95, 97,

100–02; ECF No. 89-8, Deposition of Noor Tashtosh ("Tashtosh Depo."), at 31, 34–36; ECF No. 89-9, Deposition of Ayman Mahmmad ("Mahmmad Depo."), at 40–43; ECF No. 89-11, Deposition of Kardinia Almosawi ("Almosawi Depo."), at 35–36. On the other hand, LJS Rentals presented Ali's declaration that she "personally saw each of the others electronically sign the liability waivers" [Ali Decl. ¶ 3], as well as deposition testimony from employee Ethan Jerome that he witnessed the entire party "complete their paperwork in full" [Jerome Depo. Excerpts at 8].

LJS Rentals also argues that the liability waivers are enforceable due to the facts deemed admitted in two sets of Requests for Admission ("RFA") that were served on Hammad and Tashtosh, but unanswered. LJS Rentals UMF No. 6; ECF No. 79-11, Declaration of Vladyslava V. Turner ("Turner Decl."), ¶¶ 2–3; ECF No. 79-12 (RFA to Hammad); ECF No. 79-13 (RFA to Tashtosh). Those admissions include that Mohammad and Tashtosh signed the Watersport Rental Agreement and agreed to its terms and conditions. ECF No. 79-12 at 5–6; ECF No. 79-13 at 3–4. Federal Rule of Civil Procedure 36(a) states that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). "Unanswered requests for admissions may be relied on as the basis for granting summary judgment." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007). However, "[a] trial judge has discretion to permit a late response to a request for admissions made pursuant to Rule 36 F.R.Civ.P., and thus relieve a party of apparent default." *French v. United States*, 416 F.2d 1149, 1152 (9th Cir. 1968). Claimants do not address the unanswered RFAs, instead presenting evidence that refutes the relevant admissions. LJS Rentals UMF Nos. 6, 7, 13.

The Court does not condone Claimants' failure to respond to the RFAs, but in considering the goals of Rule 36 are "truthseeking in litigation and efficiency in dispensing justice," the Court exercises its discretion to permit Claimants to serve a late response to the RFAs to Hammad and Tashtosh. *See Conlon v. United States*, 474 F.3d 616, 622

(9th Cir. 2007). In the instant Motion, LJS Rentals did not rely solely on the admissions in the unanswered RFAs and so will not be prejudiced by allowing Claimants to answer the RFAs. Even if the Court were to deem the RFAs admitted, there would still be conflicting evidence as to the liability waivers from deposition testimony presented by Claimants.

Accordingly, because there are genuine disputes over material facts as to whether Mohammad, Tashtosh, Mahmmad, and Almosawi signed the Watersport Rental Agreement, the Court cannot find at this stage that their claims of negligence are barred by the liability waivers.

### 3. Duty

As stated above, in a claim for maritime negligence, one of the elements a plaintiff must show is that the defendant was under a duty to the plaintiff to use due care. *Moreno*, 2015 U.S. Dist. LEXIS 127887, at *51. LJS Rentals argues there is no general duty by a rental company to warn of the inherent risks of jet skiing, or to train renters. ECF No. 79-1 at 16. Claimants do not address this argument.

Federal maritime law is clear that a rental company has no duty to warn of open and obvious dangers. *Hodges v. Summer Fun Rentals, Inc.*, 203 F. App'x 89, 91 (9th Cir. 2006) (finding no duty to warn of open and obvious dangers such as the likelihood of falling off a jet ski or colliding with another vessel when wake jumping or the dangers of operating a jet ski too closely to another vessel); *Craine v. United States*, 722 F.2d 1523, 1525 (11th Cir. 1984) ("The law imposes no requirement that one who rents equipment such as a boat or vehicle instruct the renter on every possible danger that could be faced."); *Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1357 (S.D. Fla. 2013) (citation omitted) (finding no duty to warn of open and obvious dangers such as steps at the end of a gangplank when exiting a ship); *In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d at 1001–02 (finding no duty for boat rental company to warn of the dangers of riding on the bow of the boat while it was in motion because there were warning signs on the boat and it was prohibited by state law). But this does not support LJS Rentals' argument that a rental company has no duty to train renters. None of the federal maritime cases cited by LJS

Rentals makes this broad finding. Instead, the cases hold that there is no duty to warn or instruct renters of open and obvious dangers, which would include at least some of the inherent risks of jet skiing. Accordingly, the Court **GRANTS** summary judgment in LJS Rentals' favor that they were not negligent for "failing to warn Claimants of the dangers with respect to going on the PWCs" [ECF No. 34 ¶ 24] because LJS Rentals had no duty to warn of the obvious dangers of jet skis, such as colliding when operating in close proximity and falling off. *See Hodges*, 203 F. App'x at 91. However, the Court cannot find that LJS Rentals owed no duty to train renters solely due to its status as a rental company for an activity with inherent risks.

### C.   Superseding Cause

"The doctrine of superseding cause is . . . applied where the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable. It is properly applied in admiralty cases." *Exxon Co. v. Sofec*, 517 U.S. 830, 837 (1996) (alteration in original) (quoting T. Schoenbaum, Admiralty and Maritime Law § 5–3, pp. 165–166 (2d ed.1994)). "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Farr v. N.C. Mach. Co.*, 186 F.3d 1165, 1169 (9th Cir. 1999) (emphasis removed) (quoting Restatement (Second) of Torts § 440 (1965)). "Superseding cause operates to cut off the liability of an admittedly negligent defendant, and there is properly no apportionment of comparative fault where there is an absence of proximate causation." *Exxon Co.*, 517 U.S. at 837–38 (citation omitted).

LJS Rentals argues that Ali intentionally operated her rental jet ski recklessly, including by getting too close to other jet skis and engaging in hazardous maneuvers, in violation of federal navigation rules, state law, and the terms of the rental agreement, and that Ali's intentional actions are the superseding cause of the collision that cuts off any liability on the part of LJS Rentals. ECF No. 79-1 at 7, 19; LJS Rentals UMF No. 13.

/ / /

Claimants oppose, arguing that Ali's operation of the jet ski, including her maneuvers and speed, were foreseeable. ECF No. 89 at 29.

### 1.    Evidentiary objections

LJS Rentals objects to any facts based on the opinions of Claimants' expert Robert A. Schofield, naval architect and naval engineer, as unreliable pursuant to Federal Rule of Evidence 702. ECF No. 104-1; *e.g.*, LJS Rentals UMF No. 7; *see also* ECF No. 89-2, Declaration of Robert A. Schofield. Much of the evidence LJS Rentals objects to is regarding Ali's steering control of her rental jet ski. *E.g.*, LJS Rentals UMF No. 7. The Court does not consider Mr. Schofield's evidence in reaching its findings regarding superseding cause and so declines to rule on whether this evidence is admissible at this time. Even if the Court had ruled on the objection and admitted Mr. Schofield's evidence, LJS Rentals' expert, Patrick Hudson, a registered professional mechanical engineer, presents testimony that contradicts Mr. Schofield's findings, creating a factual dispute that cannot be resolved at summary judgment. ECF No. 104-3 at 2–4 (Declaration of Patrick Hudson).

### 2.    Foreseeability

To determine whether an intervening force is a superseding cause, many courts consider the factors set forth in the Restatement (Second) of Torts section 442, which states as follows:

> The following considerations are of importance in determining whether an intervening force is a superseding cause of harm to another:
> (a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
> (b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;
> (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;
> (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

21

1
2

> (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

3
4

> (f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

5
6

Restatement (Second) of Torts, § 442; *Stolt Achievement v. Dredge B.E. Lindholm*, 447 F.3d 360, 368 n.25 (5th Cir. 2006).

7
8
9
10
11
12
13
14

 LJS Rentals argues that Ali's hazardous operation of the jet ski in terms of excessive speed and proximity to Mohammad's jet ski, which was the proximate cause of the collision, was not foreseeable because she contractually agreed not to do so, and that she not only violated her rental agreement but also federal navigation rules and state law.[6] LJS Rentals UMF Nos. 2–5, 7; ECF No. 79-5 (Ali's rental agreement). Claimants argue that Ali's operation of the jet ski was foreseeable because LJS Rentals' jet skis are equipped with GPS trackers with the ability to monitor the location, speed, and trajectory of each jet ski via the Ototrak website or cell phone app. ECF No. 89 at 29; Claimants' UMF No. 27.

15
16
17
18
19
20
21
22

 First, the Court does not find that the Ototrak tracking capabilities made Ali's hazardous operation of the jet ski foreseeable. Claimants show that the jet skis involved in the collision were capable of being monitored, but not that LJS Rentals or any of its employees were in fact monitoring the jet skis in real time. *See* Jerome Depo. at 58–70; ECF No. 89-5, Deposition of Tyler Peters ("Peters Depo."), at 133–60; Peters Depo. at 135 ("Q: … [E]ven though you were out of the country, you had the ability to track PWCs 87 and 96, their GPS location, via satellite? Is that a fair statement? A: Correct. Q: Okay. Are you able to do so in real time? Mr. Felder: Object to the form. The Witness: I – no."). That

23
24
25
26
27
28

---

[6] LJS Rentals claims that "Ali violated federal navigation rules, including but not limited to, Navigation Rule 6 (33 U.S.C. § 2006 (requiring operating a vessel at safe speed so as to avoid collision)) and Rule 15 (33 U.S.C. § 2006 (keeping out of other vessel's way)) as well as Cal. Harbor & Nav. Code § 655.7(a) ("No person shall use any vessel . . . in a reckless or negligent manner so as to endanger the life, limb, or property of any person."). ECF No. 91 at 2.

the Ototrak component was monitoring and recording the location and speed of the jet skis does not mean that the information was capable of being monitored in real time, nor that a human being was actually monitoring the same information in real time.

The Court also finds that Ali's actions were not foreseeable because she expressly agreed to not operate the jet ski in a dangerous manner. The rental agreement that Ali signed and agreed to includes the following terms:

> [1] PARTICIPANT agrees not to use, nor permit the use: a. of the rental watercraft for any unlawful purpose; b. of the rental watercraft in a careless, reckless, or negligent manner;
> 
> . . . .
> 
> [2] Reckless Operation of a watercraft shall include but not be limited to: a. Weaving through congested traffic; . . . d. Operating at greater than slow\no wake speed within 100 feet of an anchored or moored vessel, . . . or any manually powered vessel; e. Operating contrary to navigation rules including following too closely to another vessel, including another personal watercraft. "Following too closely" shall be construed as proceeding in the same direction and operating at a speed in excess of 10 mph within 100 feet to the rear or 50 feet to the side of another vessel which is underway, unless said vessels are operating in a narrow channel, in which case personal watercraft may operate at the speed and flow of the other vessel traffic within the channel.
> 
> . . . .
> 
> [3] PARTICIPANT acknowledges his/her responsibility for the safe and proper operation of the watercraft; and for the safety and welfare of other boaters and persons.
> 
> . . . .
> 
> [4] I understand that stopping the engine will not stop the forward motion of the PWC, and that on most PWC's, steering control is lost when the throttle is released or when the engine is turned off.
> 
> . . . .
> 
> [5] I will always operate my PWC at safe speeds, taking into consideration the conditions around me, including other boats, weather, and visibility.
> 
> . . . .
> 
> [6] I will refrain from weaving through vessels that are underway, stopped, moored or at anchor while exceeding a reasonable speed.
> 
> . . . .
> 
> [7] I will avoid making sharp turns and other maneuvers that make it difficult for others to avoid colliding with me or to understand where I am going.
> 
> . . . .

1
2
3

> [8] I will not jump wakes or waves, nor will I steer toward an object or person and then turn sharply in close proximity to that object or person in order to spray or attempt to spray them with the wash or jet spray of the watercraft, as this is unsafe operation.

ECF No. 79-5 at 6–9. Ali attested that she submitted a liability waiver to LJS Rentals LLC "on behalf of myself and all others renting the jet skis with me." Ali Decl. ¶ 3. She also declared that "[b]efore renting the jet skis on Nov. 19, 2021 and having rented and operated jet skis in the past, I was generally aware that I was engaging in a recreational sporting activity that had inherent risks." *Id.* ¶ 4. The Court finds that it was unforeseeable that Ali would violate the express terms of the rental agreement that she consented to, as well as federal and state navigation rules, by speeding and operating too close to another jet ski. *See Decker v. Gibson Prods. Co.*, 679 F.2d 212, 215 (11th Cir. 1982) (noting that "[g]enerally, independent illegal acts of third parties are deemed unforeseeable and therefore, the sole proximate cause of the injury which excludes negligence of another as a cause of injury" but acknowledging that sometimes the criminal act is deemed foreseeable); *O'Keefe v. Inca Floats*, No. C-97-1225 VRW, 1997 U.S. Dist. LEXIS 17088, at *11 (N.D. Cal. Oct. 31, 1997) (quoting *Decker*, 679 F.2d at 215). Claimants have not presented evidence that LJS Rentals knew or should have known that Ali, who had experience renting and operating jet skis and consented to the rental agreement, would violate the safety terms and navigation rules. *See Warford v. Indus. Power Sys.*, No. 06-cv-463-JL, 2008 U.S. Dist. LEXIS 84786, at *33–34 (D. N.H. Oct. 21, 2008) (finding a man's actions that disregarded the fundamentals of electrical circuitry were not foreseeable to the defendants given the man's experience and where the plaintiffs presented no evidence of such); *cf. In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. at 1001 (finding it was not foreseeable that boat renters were incapable of operating the boat safely where there was no evidence that boat renters were inexperienced or that the boat owner knew or should have known that the boat renter was incompetent to operate the boat).

/ / /

/ / /

### 3.    Independent origin

The Court finds no evidence has been presented to show that any negligence by LJS Rentals led to Ali's intentional hazardous operation of her jet ski. Although Claimants allege that Ali was inexperienced and did not receive adequate training, they have produced no evidence to support this. Instead, Ali attests to having rented and operated jet skis in the past, being aware of the inherent risks of jet skiing, and consenting to the rental agreement and its liability waivers. Ali Decl. ¶¶ 3, 4. Additionally, employee Ethan Jerome testified in his deposition that he was present when another LJS Rentals employee went over the safety checklist and also conducted a safety brief with Ali and the others in her group, in which they confirmed that the jet ski operators and passengers understood what they were being told, including emphasizing that they should keep their distance from "other water-borne vessels, especially jet skis." Jerome Depo. Excerpts at 7–32; Mahmmad Depo. at 51–52 (acknowledging a safety brief, but not remembering if he was instructed to stay away from other jet skis); ECF No. 89-7, Deposition of M.F. ("M.F. Depo."), at 58 (acknowledging a safety talk that included telling the group about the speed limit and not getting too close to each other).

Ali's passenger, M.F., testified that just prior to the collision Ali "was trying to turn the jet ski, but she couldn't because, like, it was going too fast. . . . she went on full power, and she couldn't control the jet ski any more." M.F. Depo. at 50; Claimants UMF No. 23. Ali's declaration contradicts this as she attested that she was able to drive the jet ski "without any problems before incident." Ali Decl. ¶ 5. Even if LJS Rentals was negligent in creating a steering problem for Ali, Ali's close proximity and excessive speed were (1) intentional, (2) wrongful due to the potential for harm and for violating the rental agreement and navigation rules, (3) not the normal result of a steering problem, and (4) extraordinary given her agreement not to speed or operate close to other jet skis. *See* Restatement (Second) of Torts, § 442. A steering problem alone, without close proximity and excessive speed, could have resulted in a less forceful collision or a different type of harm such as tipping over without a collision. *See id.* Consideration of all the Restatement

factors leads the Court to find that Ali's hazardous operation of the jet ski was a superseding cause of the collision that cuts off proximate causation on the part of LJS Rentals. *See Exxon Co.*, 517 U.S. at 837 (noting that superseding cause cuts off proximate causation of a negligent defendant) (citation omitted); *Farr*, 186 F.3d at 1169 (considering the Restatement factors in determining whether an action was a superseding intervening cause).

Accordingly, the Court **GRANTS** LJS Rentals' Motion for Summary Judgment on the issue of superseding cause. Because Ali's intentional actions were the superseding cause of the collision, this cuts off proximate causation by LJS Rentals and thus, liability. *See Exxon Co.*, 517 U.S. at 842 ("A party whose fault did not proximately cause the injury is not liable at all."). Any claims against LJS Rentals LLC and Tyler Peters in this action are **dismissed with prejudice**. *See id.* Accordingly, Claimants' Third-Party Complaint against Tyler Peters is also **dismissed with prejudice [**ECF No. 35]. The Court next addresses how this finding affects other pending motions.

## IV.   CLAIMANTS' MOTION FOR SUMMARY JUDGMENT AND LJS RENTALS LLC'S CROSS-MOTION FOR SUMMARY JUDGMENT

Claimants' Motion for Summary Judgment seeks to dismiss several of LJS Rentals LLC's affirmative defenses [ECF No. 46] to Claimants' amended claims for compensatory damages [ECF No. 34], as well as LJS Rentals LLC's counterclaims against Claimants [ECF No. 46]. ECF No. 78-1.

LJS Rentals LLC's Cross-Motion for Summary Judgment as to its counterclaims seeks a determination as a matter of law that Hammad, Almosawi, Mahmmad, and Tashtosh must immediately defend LJS Rentals LLC based on the express indemnity provisions in the rental agreements and reimburse it for its legal expenses. ECF No. 85-1 at 1–3.

/ / /

/ / /

/ / /

## A.   Affirmative Defenses

Claimants seek to dismiss by summary judgment the following affirmative defenses of LJS Rentals LLC: inherent risk (second), express waiver and release (third), indemnity/apportionment (fourth), several/non-joint liability (eighth), joint and several liability (ninth), contribution (fourteenth), assumption of risk (twenty-second), terms and conditions (twenty-eighth), and accord and satisfaction (thirty-third). ECF No. 78-1 at 10–11.

Because the Court grants LJS Rentals' Motion for Summary Judgment based on superseding cause and dismisses all claims against LJS Rentals, Claimants' Motion for Summary Judgment as to the affirmative defenses is **DENIED** as moot.

## B.   Counterclaims

Claimants also seek to dismiss by summary judgment LJS Rentals LLC's counterclaims of breach of contract, express indemnity and defense, implied/equitable indemnity, contribution, and declaratory relief.[7] ECF No. 78-1 at 15. They argue that all five causes of action are premised on the enforceability of the Watersport Rental Agreement, but all must be dismissed because Claimants did not sign or consent to the rental agreement or any of its terms and conditions, and the liability waivers are void pursuant to 46 U.S.C. § 30527. *Id.* at 27, 34. They also argue that even if the contract was enforceable, LJS Rentals LLC cannot seek indemnity or contribution from claimants because they did not cause or contribute to the collision that killed Mohammad and injured M.F. and Tashtosh. *Id.* at 31–33.

In LJS Rentals LLC's Cross-Motion for Summary Judgment, it seeks a determination as a matter of law that Claimants and Ali must immediately defend LJS Rentals LLC based on the express indemnity provisions in the rental agreements and

---

[7] Claimants refer to these claims as "crossclaims," but the Court will refer to them as counterclaims. *See* ECF No. 46 at 19–33. The Court will refer to LJS Rentals LLC's claims against Ali as crossclaims. *Id.*

reimburse it for its legal expenses incurred to date. ECF No. 85-1 at 4. LJS Rentals LLC refers to the following provision in the rental agreement as providing both the duty to defend and to indemnify:

> In consideration of being allowed to use the facilities, vessels, and participate in operating personal watercraft, boat, flyboard, kayak, SUP, Pedal Boat, flyboard and other activities (collectively the "Activities") provided by Luxury Jet Ski Rentals (the "Host"), the Participant, and the Participant's parent(s) or legal guardian(s) if the Participant is a minor, do hereby agree, to the fullest extent permitted by law, as follows:
>
> . . . .
>
> TO INDEMNIFY the Host, its owners, affiliates, operators, employees, agents, officers, and/or any entity to which the Host owes a contractual indemnification obligation, from all liability for any loss, damage, injury, death, or expense that the Participant (or his/her next of kin) may suffer, arising out of participation in the Activities and/or use of the Equipment, including while receiving instruction and/or training.

ECF No. 85-1 at 4–5; ECF No. 79-5 at 4.

To the extent that Claimants argue that the counterclaims should be dismissed because Mohammad and the surviving Claimants did not sign or consent to the rental agreements, or because the liability waivers are void pursuant to 46 U.S.C. § 30527, the Court addressed these arguments previously, finding there is a genuine issue of material fact as to whether Mohammad and the surviving Claimants signed the rental agreements, and that § 30527 is not applicable here. *See supra* Part III.B.2.a., c.

Setting aside the dispute about consent, the Court turns to LJS Rentals LLC's arguments regarding the express requirement to defend and indemnify and finds that federal law applies here. The Watersport Rental Agreement is a maritime contract because it concerns the hiring of personal watercraft to be operated in navigable waterways; the contract is linked to a vessel involved in a maritime activity. *See Norfolk S. Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 24 (2004) (noting that whether a contract is maritime "depends upon . . . the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." (internal quotation marks and citation omitted)); *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961) ("Without

doubt a contract for hire either of a ship or of the sailors and officers to man her is within the admiralty jurisdiction." (citation omitted)); *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 539 (5th Cir. 1986). Courts resolve disputes concerning maritime contracts according to federal law. *See St. Clair Marine Salvage, Inc. v. Bulgarelli*, 796 F.3d 569, 575 (6th Cir. 2015) ("For admiralty cases alleging breach of contract, we look both to the federal maritime law of contracts as well as to general principles of contract interpretation." (internal quotation marks and citation omitted)); *Starrag v. Maersk, Inc.*, 486 F.3d 607, 616 (9th Cir. 2007) ("The courts interpret and resolve disputes concerning maritime contracts such as the CTBL according to federal law."). Specifically, "[t]he interpretation of an indemnity clause in a maritime contract is ordinarily governed by federal maritime law rather than by state law." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332 (5th Cir. 1981).

The Court is not persuaded by LJS Rentals LLC that California law governs the interpretation of the rental agreement. LJS Rentals LLC argues that "shore side rental of watersports equipment to the public lacks both a maritime flavor and a close relationship to activity traditionally subject to admiralty law" relying on an unreported—and thus nonbinding—Ninth Circuit case. ECF No. 88 at 24. In *In re Complaint & Petition of Blue Water Boating, Inc.*, 786 F. App'x 703 (9th Cir. 2019), the Ninth Circuit found that admiralty jurisdiction did not apply where the alleged negligence involved the rental of a stand-up paddleboard—in which none of the claims were contract claims—and affirmed the district court's dismissal for lack of subject matter jurisdiction of the rental company's complaint for limitation of liability. *Id.* at 704. However, in the same opinion, the Ninth Circuit gave as an example of "traditional maritime activity" involving vessels, a case that extended admiralty jurisdiction to an incident involving a jet ski. *Id.* & n.3 (citing *Mission Bay Jet Sports, LLC v. Colombo (In re Mission Bay Jet Sports, LLC)*, 570 F.3d 1124, 1129 (9th Cir. 2009)). Additionally, *where* the rental agreement in the instant case was signed has no bearing on whether admiralty jurisdiction applies. *See Norfolk S. Ry.*, 543 U.S. at 24 ("Nor can we simply look to the place of the contract's formation or performance" to

determine if the contract is a maritime one); *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir. 1986) ("Whether a particular contract can be characterized as maritime depends on the nature and character of the contract, not on the situs of its performance or execution." (citation omitted)). The contract at issue here concerns the rental and use of a vessel on navigable waters, which is a maritime service and thus falls under admiralty jurisdiction. *See Norfolk S. Ry.*, 543 U.S. at 24; *see also Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 543 (1995) ("Although we agree with petitioners that these cases do not say that every tort involving a vessel on navigable waters falls within the scope of admiralty jurisdiction no matter what, they do show that ordinarily that will be so.").

"Interpretation of the terms of a contract is a matter of law, . . . and [t]he determination as to whether defense or indemnification is due must be made at the outset of the litigation by reference solely to the relevant pleadings and pertinent contractual provisions." *In re Oil Spill by the Oil Rig*, 841 F. Supp. 2d 988, 993 (E.D. La. 2012) (internal quotation marks and citations omitted). According to federal law:

> A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage. Thus, for example, it is widely held that a contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligent act unless the contract clearly expresses such an obligation in unequivocal terms.

*Corbitt*, 654 F.2d at 333. "[E]xculpatory clauses, whether fully exonerating a party from its own negligence or not, must be clearly and unequivocally expressed." *Sander v. Alexander Richardson Invs.*, 334 F.3d 712, 715 (8th Cir. 2003) (internal quotation marks and citation omitted).

The Court finds LJS Rentals LLC has failed to carry its initial burden of producing evidence of a duty to defend. A duty to defend—here, to immediately provide a legal defense for LJS Rentals LLC—is separate from a duty to indemnify. *See In re Oil Spill by*

*the Oil Rig*, 841 F. Supp. 2d at 1009 (discussing the duty to defend as separate and distinct from the duty to indemnify and refusing to automatically apply insurance rules to the duty to defend in a non-insurance contract). LJS Rentals LLC relies on *Crawford v. Weather Shield Mfg., Inc.*, 44 Cal. 4th 541 (2008) for its argument that the rental agreement contains a duty to defend that has been triggered by Claimants' claims and LJS Rentals LLC's request for defense, but *Crawford* is inapposite. ECF No. 85-1 at 4, 6–9; ECF No. 92 at 1–2.

The court in *Crawford* found that a non-maritime contract obliged a subcontractor to defend the builder when both were sued—even though the subcontractor was ultimately found not negligent—because of the express language in their contract and by applying California law. *Crawford*, 44 Cal. 4th at 557–59. The contract at issue in *Crawford* stated that the subcontractor promised "to indemnify and save [JMP] harmless against all claims" and also "at [its] own expense to *defend any suit or action* brought against [JMP] *founded upon* the claim of such damage[,] . . . loss, . . . or theft." *Id.* at 547–48 (alterations and emphasis in original). Thus, the court found the express language supported the subcontractor's duty to defend as a separate and different obligation from its duty to indemnify. *Id.* at 553–54, 558–59. It also applied a California statute in deciding the subcontractor was obligated to defend the builder immediately upon the proper tender of defense by the builder. *Id.* at 558.

The contract at issue here is not like the one in *Crawford* because the word "defend" is entirely absent from the rental agreement, as are any other words or phrases that clearly express a purpose to defend. Furthermore, the California statute applied in *Crawford*, section 2778 of the California Civil Code, conflicts with federal maritime law and will not be relied on here. The statute "establishes an indemnitor's obligation to *defend* the indemnitee *upon request, even though the indemnity agreement does not expressly so provide* . . . ." *Id.* at 555 (emphasis in original) (citation omitted). This contradicts federal maritime law that a contract of indemnity "should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that

it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *See Corbitt*, 654 F.2d at 333. The duty to defend LJS Rentals LLC is not clearly and unequivocally expressed in the rental agreement because it is not expressly stated within the terms of the agreement, nor can it be reasonably inferred. *See Sander*, 334 F.3d at 715; *Corbitt*, 654 F.2d at 333. Therefore, the Court finds as a matter of law that there is no duty to defend in the rental agreement.

Because the Court **DENIES** LJS Rentals LLC's Cross-Motion for Summary Judgment as to the duty to defend for failure to show evidence of the existence of a duty to defend on the face of the agreement, the Court **dismisses with prejudice** LJS Rentals LLC's counterclaim and crossclaim as to the duty to defend [ECF No. 46]. The Court also **DENIES** Claimants' Motion for Summary Judgment as to LJS Rentals LLC's counterclaims of breach of contract, express indemnity, implied/equitable indemnity, contribution, and declaratory relief because there is a question of material fact regarding whether Claimants signed or consented to the rental agreements.

## V.   LJS RENTALS LLC'S PETITION FOR LIMITATION OF LIABILITY

LJS Rentals LLC initiated this case with its LOLA Complaint, requesting exoneration from or limitation of liability for the incident to the value of the jet ski operated by Mohammad. ECF No. 1. In LJS Rentals' Motion for Summary Judgment as to superseding cause, they argue for LJS Rentals to be exonerated as to any and all liability asserted because they are not a proximate cause of the collision. ECF No. 79-1 at 19, 24.

The Limitation of Liability Act provides, *inter alia*, that the liability of the owner of a vessel for any claim arising from "any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner" "shall not exceed the value of the vessel and pending freight." 46 U.S.C. § 30523(a), (b). "Instead of being vicariously liable for the full extent of any injuries caused by the negligence of the captain or crew employed to operate the ship, the owner's liability is limited to the value of the ship unless the owner himself had

/ / /

'privity or knowledge' of the negligent acts." *Agni v. Wenshall (In re City of N.Y.)*, 522 F.3d 279, 283 (2d Cir. 2008).

To determine whether a shipowner is entitled to limit his liability, "[f]irst, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident"; and "[s]econd, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness." *Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558, 1563–64 (11th Cir. 1985) (citation omitted). "To produce liability, the acts of negligence or conditions of unseaworthiness must be a contributory and proximate cause of the accident." *Hercules Carriers, Inc.*, 768 F.2d at 1566.

The Court finds LJS Rentals LLC is entitled to exoneration as a matter of law. LJS Rentals has shown there are no genuine issues of material fact regarding negligence on their part. Because the Court has found that Ali's intentional actions were the superseding cause of the fatal collision, this cuts off proximate causation by LJS Rentals LLC and Tyler Peters, and thus liability. *See supra* Part III.C.; *Exxon Co.*, 517 U.S. at 842; *Hercules Carriers, Inc.*, 768 F.2d at 1566. Because LJS Rentals LLC is not negligent, it is entitled to exoneration of all liability. *See In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d at 997–98 (finding exoneration proper where there were no genuine issues of material fact regarding any alleged negligence on the part of the shipowner); *Rogers v. Lilly*, No. 1:04CV2133, 2006 U.S. Dist. LEXIS 83905, at *24 (N.D. Ohio Nov. 17, 2006) (finding exoneration proper where there was no justiciable issue on all elements of negligence and causation in particular).

## VI.   CONCLUSION

As set forth above, the Court:

1.   **GRANTS** LJS Rentals LLC's and Tyler Peters' Motion for Summary Judgment in their favor as to superseding cause, negligent entrustment, and enforcement of liability waivers as to Ali and **DENIES** summary judgment as to the enforcement of the liability waivers as to Mohammad, Tashtosh, Mahmmad, and Almosawi [ECF No. 79];

2.      **DENIES as moot** Claimants' Motion for Summary Judgment as to LJS Rentals LLC's affirmative defenses, **DENIES** summary judgment on LJS Rentals LLC's counterclaims of breach of contract, express indemnity, implied/equitable indemnity, contribution, and declaratory relief, and **GRANTS** summary judgment in favor of Claimants on LJS Rentals LLC's counterclaim of the duty to defend and **dismisses with prejudice** the counterclaim invoking the duty to defend [ECF No. 78];

3.      **DENIES** LJS Rentals LLC's Cross-Motion for Summary Judgment as to the duty to defend and **dismisses with prejudice** LJS Rentals LLC's counterclaim against Claimants and crossclaim against Ali as to the duty to defend [ECF No. 85];

4.      **EXONERATES** LJS Rentals LLC from all liability [ECF No. 1];

5.      **DISMISSES WITH PREJUDICE** Claimants' Third-Party Complaint against Tyler Peters [ECF No. 35];

6.      **ORDERS** Claimants to answer any unanswered Requests for Admission, including those served on Hammad and Tashtosh, on or before **July 23, 2024**; and

7.      **ORDERS** counsel for all parties to contact the chambers of the magistrate judge for this action by **July 12, 2024** to schedule a status conference to discuss next steps.

**IT IS SO ORDERED**.

Dated:  July 9, 2024

Honorable Linda Lopez
United States District Judge